44 So.2d 303

**GENERAL MILLS, Inc. v. UNITED FRUIT CO.**

No. 39026.

Jan. 9, 1950.

Dart, Guidry & Price, New Orleans, for plaintiff-appellant.

Phelps, Dunbar, Marks & Claverie, Ashton Phelps, New Orleans, for defendant-appellee.

FOURNET, Chief Justice.

The plaintiff, General Mills, Inc., instituted this suit against the defendant, United Fruit Company, to recover damages in the sum of $10,480.20, being the cost to it of reconditioning 3,500 sacks of flour that had become infested with weevils and pin worms, allegedly due to the defendant's

failure to carry out its contract to transport this flour to the Port of Limon, Costa Rica, in accordance with an oral agreement.

The defendant, admitting the flour had been booked for transportation over its lines and that, accordingly, it had been delivered to its wharf at New Orleans and it had issued its dock receipt therefor, contends that under the terms of this receipt it was relieved of any responsibility for failure to transport due to lack of conveyances or facilities, and, further, that since the actual cause of the failure to ship this flour was due to the condition of war existing at the time, it was also relieved of any responsibility in connection with failure or delay in shipping this cargo under the express stipulations contained in the bill of lading that was made a part of the dock receipt by reference. The defendant's final contention is that when it became apparent no further shipments could be made to Limon, it so informed the plaintiff and advised that from that time the flour was at the plaintiff's risk. In a supplemental and amended answer the defendant pleaded, alternatively, the prescription of 1 year as provided in 46 U.S.C.A. § 1303(6) of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, and the limitation of 6 months contained in paragraph 22 of the bill of lading. It also averred that the plaintiff was without right to institute this suit, having subrogated its rights in the matter to its insurance underwriters.

The plaintiff is appealing from the judgment of the lower court dismissing its suit and rejecting its demands.

According to the record it appears that during the middle of 1942, shortly after the United States became engaged in the conflict that is termed by the historians as World War II, a pressing need arose for the immediate and constant flow of flour to the Republic of Costa Rica in order that this country might maintain its economy. At this time shipping through the Gulf of Mexico from the Port of New Orleans was greatly restricted by governmental agencies charged with the maintenance of security measures because of increased action by enemy submarines in that body of water that had resulted in the sinking of many ships. However, as the need for this flour in Costa Rica increased, the plaintiff, joined by the diplomatic representatives of the Costa Rican legation in Washington importuned the defendant, United Fruit Company, to book 6,000 sacks of flour for shipment to Port Limon, Costa Rica, through the Port of New Orleans on vessels of the company then assigned to the Limon run. Under this pressure the company, that had already lost two of its three vessels on this run, i. e., the Tela and the Heredia, finally agreed orally to accept this flour for shipment on the third of these vessels, the San Pablo, due to sail from New Orleans on July 8, and it was stipulated that the flour should be delivered to the defendant's wharf in New Orleans between June 15 and June 29, 1942. The 3,500 bags

involved in this suit actually arrived in New Orleans on June 30, 1942, and were turned over to the defendant at its wharf on July 2, at which time the defendant issued its dock receipt therefor and delivered this receipt to George M. Leininger & Co., Inc., the plaintiff's broker in New Orleans. For reasons of security the receipt did not specify the name of the vessel on which the flour was to be moved, but, as above stated, the evidence discloses it was scheduled to be transported on the San Pablo. On July 2, the very day on which the company issued this receipt, the San Pablo was sunk in the Port of Limon, which left the company without any vessels assigned to this specific run. After exhausting all efforts to secure space in other vessels, although aided to this end by the plaintiff and the Costa Rican legation in Washington, and it became apparent it would be unable to transport this flour, the defendant, on August 14, 1942, wrote the plaintiff advising it to this effect and stating that the cargo "then on hand or on docks is entirely at your risk and expense," and that speedy steps should be taken to protect the plaintiff's interest therein. Despite such advice, however, the defendant, the plaintiff, and the Costa Rican representatives continued their efforts to secure space, although conditions by then were growing progressively worse and the situation seemed hopeless. The plaintiff, most anxious to get the flour out of the country because, being a product of Canadian wheat, it could not be disposed of here, then approached the defendant with the suggestion that it might be moved through some Pacific Coast port on other vessels of the defendant bound for Panama, Cristobal, or Puntarenas, this latter port being on the west coast of Costa Rica, and from there transported to Limon. After these arrangements had finally been concluded during the latter part of September, and it was agreed that the defendant would handle the shipment from Los Angeles during October on board vessels bound for Puntarenas, an examination was then made of the flour and it was disclosed to have become infested with weevils and pin worms, necessitating its reconditioning in the Buffalo, New York, plant of the plaintiff at a cost of $10,480.20.

The defendant in receiving the goods on its dock for shipment on an unnamed vessel bound for Limon under a bill of lading that was then being used by the United Fruit Company for similar shipments, issued its dock receipt dated July 2, 1942, acknowledging that the flour had been received "in apparent good order and condition externally." This receipt contained the following provision: "Said goods are received subject to delay and default in shipment caused by * * * lack of conveyances, room or facilities of any sort and the like." In this receipt it is also stipulated that "The United Fruit Company shall not become responsibile for the goods as carrier until the goods are actually loaded on steamer; until such loading, *it shall be liable only for loss or damage occasioned*

*by its fault, such as an ordinary bailee is liable for, but subject also to the conditions, exceptions and limitations of liability and value contained in said bill of lading with which shippers are understood to have acquainted themselves and to assent to."* This bill of lading was never actually issued because of the inability of the defendant to place the cargo on board in New Orleans, but its provisions, which were made a part of the dock receipt by reference, contained the stipulation that "Goods * * * are accepted by the Carrier subject to delays or failure in shipment, transportation, delivery or otherwise, occasioned by war * * *; shortages of * * * conveyances or room; lack of facilities of any sort; * * * and notice to shipper or others of any danger of such delay or failure is hereby waived; and the Carrier shall not be responsible for any such delay or failure; * * * and all conditions, exemptions, exceptions, and limitations of the liability of the Carrier contained in this contract shall be deemed to apply also to such warehouseman's liability as well as to liability as a carrier." (Italics ours.)

The theory advanced by the plaintiff, that is, that "where, during then existing war conditions, a carrier agrees to transport merchandise it is liable for damage suffered by the merchandise while in its possession due to delay in loading and transporting it," is untenable in view of the conditions under which the goods were received by the defendant. This flour was received for transportation under the conditions stipulated in the receipt that the defendant would not be responsible for any delay or default in making the shipment because of lack of conveyances, and also because of the conditions then existing because of the war, as stipulated in the bill of lading that was customarily used by the defendant and formed a part of the agreement between the parties. Notice of such conditions was specifically waived, but, in any event, the plaintiff was advised of the delays and conditions causing them, in so far as the security restrictions of the nation permitted, and it admitted in its correspondence that it knew the defendant was exerting every possible effort to move the flour out of the country. The authorities relied on by the plaintiff are clearly without application under these facts and no useful purpose could be served by analyzing and distinguishing them.

Having reached this conclusion, it is unnecessary for us to pass upon the alternative pleas of prescription.

For the reasons assigned, the judgment appealed from is affirmed.

MOISE, J., recused.